**Donnie L. FISHER, Respondent,**

v.

**STATE of Missouri, Appellant.**

**No. WD 73269.**

Missouri Court of Appeals, Western District.

Dec. 27, 2011.

Chris Koster, Attorney General, Jamie Pamela Rasmussen, Assistant Attorney General, Jefferson City, MO, for Appellant.

Mark A. Grothoff, Assistant State Public Defender, Columbia, MO, for Respondent.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Presiding Judge.

The State of Missouri ("the State") appeals from the judgment of the Circuit Court of Randolph County, Missouri ("motion court"), granting Donnie L. Fisher's ("Fisher") Rule 29.15 amended motion for post-conviction relief. The motion court found that Fisher's appellate counsel provided ineffective assistance by failing to raise as error, on direct appeal, the trial court's refusal to instruct the jury on self-defense and on lesser-included offenses for the charges of first-degree assault of a law enforcement officer. The motion court vacated Fisher's convictions on first-degree assault of a law enforcement officer and armed criminal action and placed the case on the trial setting docket. Because the motion court's ruling is clearly erroneous, we reverse.

## Facts and Procedural Background[1]

 Fisher and Roy Sanford ("Sanford") escaped from a Georgia prison. They stole a truck and a sawed-off shotgun and were considered armed and danger-

---

1. Generally, on appeal of a ruling on a Rule 29.15 motion for post-conviction relief, the facts must be viewed in the light most favorable to the verdict. *Rousan v. State*, 48 S.W.3d 576, 579 (Mo. banc 2001). However, because one of Fisher's points on appeal is the trial court's failure to instruct the jury on self-defense, we will view the evidence in a light most favorable to the defendant. *State v. Crawford*, 904 S.W.2d 402, 404 n. 2 (Mo.App. E.D.1995) (citing *State v. Weems*, 840 S.W.2d 222, 226 (Mo. banc 1992)). Having said that, it should be noted that there was no testimony at the Rule 29.15 hearing, and most of the relevant facts were stipulated to by the parties.

ous. The men returned to Huntsville, Missouri, where they hid and barricaded themselves in an unoccupied mobile home, which was owned by an acquaintance.

Aside from the fact that they were escaped prison convicts who knew and expected law enforcement would pursue and attempt to apprehend them, Fisher had seen his and Sanford's mug shots on a local television newscast and knew that the police in the area of the television viewing area (which included Huntsville) were actively looking for them and were closing in on the prison escapees. Other than law enforcement related personnel—which Fisher and Sanford knew and expected were *lawfully* looking for them—there was no other evidence adduced at trial of any other person the two escaped convicts believed might be *unlawfully* attempting to find and harm them.

At trial, Fisher stipulated that he and Sanford possessed a sawed-off shotgun and that they had made statements that they would *not* return to prison alive. In fact, at all relevant times, Fisher carried in a pocket on his person a letter which stated, in pertinent part:

> To whom it may concern: Upon my capture, or should I say death, because that's what it's got to be, I choose to die rather than live like an animal in the midst of n[* * *]ers. My only request is that I ask to be buried in Owensville, Missouri, right beside my son. I want the tombstone to say, "Too fast to live, too young to die," with a pistol on the front. Don't forget the little vase for flowers....

Fisher and Sanford remained in the mobile home for seven days before the owner informed law enforcement officers of the prison escapees' location. After warning the police that Fisher and Sanford were armed and had a police scanner, the owner provided law enforcement officers with a key to the mobile home and gave them permission to search the mobile home. Initially, the police officers (there were a total of five officers) attempted to use the key to gain access to the mobile home to capture the escapees without incident, but the front door entrance was barricaded and the back door could only be partially opened due to a chain locking mechanism.

Next, the law enforcement officers deployed non-lethal tear gas in an effort to flush the escapees out of the mobile home for apprehension. Because the officers were aware that Fisher and Sanford might have been in possession of a police scanner and that the escapees had indicated that they would not be taken into custody alive, the officers limited all radio traffic so as not to disclose their presence and tip off Fisher and Sanford that the police were coming to arrest them. At 5:30 a.m., Fisher and Sanford were asleep (but soon awakened) when the officers fired a total of sixteen canisters of tear gas through each of the windows of the mobile home (two canisters per window) with a 12–gauge shotgun. At trial, Fisher testified that Sanford stated "they" are using the tear gas to drive us out of the mobile home. Fisher testified that he responded to Sanford: "Man, I ain't going."

Fisher and Sanford covered their faces with towels to avoid the effects of the tear gas and did not exit the mobile home. The officers waited approximately thirty minutes for the tear gas to take effect and force the escapees out, but to no avail. Shortly thereafter, several police officers approached the rear door of the mobile home to attempt to gain entry by prying it open with a "hooligan tool." As the first police officer began to pry the rear door open, Fisher heard the noise at the rear door and fired the sawed-off shotgun in that direction twice, hitting the officer. The officer attempted to retreat, but was

hit by a third shotgun blast—at which point the officer yelled, "Officer has been shot!" Two other police officers attempted to rescue their colleague and both officers were hit by Fisher's gunfire. The shoot-out between the police and the escapees then ensued; Fisher was ultimately shot in the shoulder and dropped the shotgun; the police scanner registered the communication of "Officers down"—which was heard by the escapees; Fisher suggested to Sanford that they surrender; Sanford picked up the sawed-off shotgun and fired two or three more shots; then, the escapees surrendered. Though none of the officers were killed, several were severely injured.

At trial, Fisher claimed he and Sanford had no way of knowing that police officers were the ones that had fired the tear gas into the barricaded mobile home he and Sanford were hiding in and that, because he was scared of being shot and killed, he fired the loaded sawed-off shotgun (that he had stolen) in what Fisher argues was lawful self-defense.

Fisher was charged by Felony Information with five counts of assault of a law enforcement officer in the first degree, § 565.081,[2] and five counts of armed criminal action, § 571.015.

During the jury instruction conference at trial, Fisher tendered self-defense instructions based on MAI–CR 3d 306.06 on the counts for first-degree assault of a law enforcement officer, which were refused by the trial court. Fisher also tendered instructions for second-degree assault of a law enforcement officer on the counts for

first-degree assault of a law enforcement officer, which were also refused by the trial court.

The jury found Fisher guilty of all counts of the Information. The trial court sentenced Fisher to life imprisonment on each count of assault and five years imprisonment on each count of armed criminal action, all sentences to run consecutively.

Fisher appealed his convictions. His appellate counsel raised a single point on appeal: that the trial court abused its discretion in compelling him to remain shackled at counsel table when he testified. *State v. Fisher*, 45 S.W.3d 512, 514 (Mo. App. W.D.2001). This court affirmed the judgment of convictions. *Id.* at 515.

Subsequently, Fisher filed a Rule 29.15 motion for post-conviction relief, which was later amended by counsel. In his motion, Fisher alleged that his appellate counsel was ineffective for failing to assert on direct appeal that the trial court erred in refusing to submit to the jury: (i) an instruction on self-defense for the assault counts, and (ii) an instruction on the lesser-included offense of assault of a law enforcement officer in the second degree for the assault counts. An evidentiary hearing was conducted.[3] The motion court concluded that both of Fisher's points were meritorious and granted his motion, vacating his convictions and ordering the case placed on the trial setting docket.

The State appeals.

2. Because the events for which Fisher was convicted occurred on or about February 25, 1999, all statutory references are to RSMo 1994.

3. No witnesses were called. Upon the request of Fisher's counsel, the motion court took judicial notice of the underlying criminal file and the transcript therefrom. Three ex-

hibits were offered by Fisher's counsel and received into evidence: Exhibit 1: the brief filed in Fisher's direct appeal; Exhibit 2: our opinion in *State v. Fisher*, 45 S.W.3d 512 (Mo.App. W.D.2001); and Exhibit 3: the affidavit of Fisher's direct appeal counsel. The motion court also heard arguments of counsel.

## Standard of Review

Rule 29.15 is the exclusive procedure by which a person convicted of a felony after trial may seek relief for a claim of ineffective assistance of appellate counsel. Rule 29.15(a). As the movant, Fisher had the burden of proving his claims for relief by a preponderance of the evidence. Rule 29.15(i). Appellate review of the motion court's disposition of a Rule 29.15 motion is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k). "Findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000).

"A defendant is entitled to effective assistance of appellate counsel." *Storey v. State*, 175 S.W.3d 116, 148 (Mo. banc 2005) (citing *Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)). The standard for proving ineffective assistance of appellate counsel is high. *Middleton v. State*, 80 S.W.3d 799, 808 (Mo. banc 2002). In reviewing whether appellate counsel's performance was constitutionally deficient, the test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is applied. *Anderson v. State*, 196 S.W.3d 28, 36 (Mo. banc 2006). "To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Tisius v. State*, 183 S.W.3d 207, 215

(Mo. banc 2006). The movant must also show prejudice—that "[t]he claimed error [was] sufficiently serious to create a reasonable probability that, if it was raised, the outcome of the appeal would have been different." *Id.* (citing *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)).

## Analysis

### Point I—Refusal to Submit Self– Defense Instruction

In its first Point on appeal, the State asserts that the motion court clearly erred in granting post-conviction relief based on Fisher's claim that his appellate counsel was ineffective for failing to raise as error, on direct appeal, the trial court's refusal to submit to the jury an instruction on self-defense for the counts relating to assault of a law enforcement officer in the first degree. Because the trial court did not err in refusing to submit a self-defense instruction and, consequently, Fisher's appellate counsel was not ineffective for failing to raise a non-meritorious claim in Fisher's direct appeal, *Glover v. State*, 225 S.W.3d 425, 429 (Mo. banc 2007), the motion court has clearly erred in granting Fisher's Rule 29.15 motion on this basis.

■ "In the State of Missouri, self-defense is a person's right to defend himself or herself against attack." *State v. Edwards*, 60 S.W.3d 602, 612 (Mo.App. W.D. 2001) (citing *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984)). That right is codified in section 563.031.[4] Sec-

---

4. Section 563.031 provides in pertinent part:

1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he **reasonably** believes such force to be necessary to defend himself or a third person from what he **reasonably** believes to

be the use or imminent use of **unlawful** force by such other person, unless:
(1) The actor was the initial aggressor; except that in such case his use of force is nevertheless justifiable provided:
(a) He has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the

tion 563.031.2 limits the justifiable use of deadly force upon another person to situations where the actor *reasonably* believes that such force is necessary to protect himself or another against, among other things, death or serious physical injury initiated by *unlawful* force. The use of deadly force requires "[s]ome affirmative action, gesture or communication by the person feared indicating the immediacy of danger, the inability to avoid or avert it, and the necessity to use deadly force as a last resort." *State v. Isom,* 660 S.W.2d 739, 742 (Mo.App. E.D.1983). "Something more than fear is required to justify such extreme conduct." *Id.*

▆▆▆ A defendant has the burden of injecting the issue of self-defense into the case by substantial evidence. § 563.031.4. " 'Substantial evidence' is evidence putting a matter in issue." *State v. Avery,* 120 S.W.3d 196, 200 (Mo. banc 2003). To permit the use of deadly force in self-defense, four elements must be present:

(1) an absence of provocation or aggression on the part of the defender; (2) a reasonable belief that deadly force is necessary to protect himself or herself against an immediate danger of death, serious physical injury, rape, sodomy, or kidnapping or serious physical injury through robbery, burglary or arson; (3) a reasonable cause for that belief; and (4) an attempt by the defender to do all within his or her power consistent with his or her own personal safety to avoid the danger and the need to take a life.

*Edwards,* 60 S.W.3d at 612 (citing § 563.031 and *Chambers,* 671 S.W.2d at

783). Whether the defendant has produced the quantum of evidence necessary to support the submission of a self-defense instruction is a question of law for the trial court. *State v. Nunn,* 697 S.W.2d 244, 246 (Mo.App. E.D.1985).

The third element, the *reasonable* cause for the belief that deadly force is necessary, is viewed from the circumstances as they appeared to the defendant. However, the *reasonableness* of the belief itself, the second element, is determined by an *objective* test. This objective standard measures conduct based on what a hypothetical ordinary reasonable and prudent person would have believed and how they would have reacted.

*Edwards,* 60 S.W.3d at 612 (emphasis added) (numerous internal citations omitted).

▆▆▆ Herein lies the problem with Fisher's self-defense argument: ordinarily reasonable and prudent people do not escape from prison, steal a sawed-off shotgun, hole themselves up in a barricaded mobile home, carry around a note declaring a conscious decision to die rather than permit re-capture by law enforcement, and then "reasonably" question whether law enforcement might be lawfully attempting to re-capture them when non-lethal tear gas is initiated into their hiding place. Further, under the circumstances that Fisher and Sanford created by their conduct and statements to others, they invited the use of deadly force by law enforcement and cannot, as a matter of law, now escape the consequences of their conduct under the guise of self-defense.

---

latter persists in continuing the incident by the use or threatened use of unlawful force;
. . .
. . . .
2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless he reasonably believes that such deadly

force is necessary to protect himself or another against death, serious physical injury,. . . .
(Emphasis added.) The application of the 2010 amendments to this statute to these facts is not before the court, and we express no opinion as to any impact they may have on our analysis.

"The right of an arrestee to self-defense does not arise when the arrestee creates a situation so 'fraught with peril' as to invite the use of force to subdue it." *State v. Nunes*, 546 S.W.2d 759, 763 (Mo.App. 1977). "When a man puts himself in a state of resistance and openly defies the officers of the law, he is not allowed to take advantage of his own wrong, if his life is thereby endangered, and set up the excuse of self-defense." *Id.* at 764 (citation omitted). "An officer is expected to be the aggressor, and is not to be placed on the same level as ordinary individuals having a private quarrel or denied that protection commensurate with the public duty exacted." *State v. Thomas*, 625 S.W.2d 115, 122 (Mo.1981) (internal citations and quotations omitted).

We conclude that the trial court properly determined as a matter of law that Fisher was not entitled to an instruction on self-defense, and consequently, we conclude that Fisher's appellate counsel could not be deemed to be ineffective for failing to raise a non-meritorious claim on appeal. Fisher stipulated that he was an escaped convict; he had seen his picture on television and knew the police were looking for him; he had stolen a truck and possessed a sawed-off shotgun; and he had asserted that he would not be taken back to prison alive. The officers shot non-lethal tear gas into the mobile home with a 12–gauge shotgun and waited thirty minutes before approaching the back door of the mobile home to pry the door open. Neither of these actions formed a basis for a reasonable belief that Fisher faced an immediate danger of deadly force or serious bodily injury. Furthermore, it would be unreasonable for Fisher to believe that anyone but law enforcement would shoot tear gas into an escapee's barricaded hideout prior to taking steps to apprehend the fugitives. There was no evidence that the officers used any force, deadly or otherwise, before

Fisher opened fire. There was certainly no evidence that Fisher attempted "to do all within his power consistent with his personal safety to avoid the danger and the need to take a life." *Chambers*, 671 S.W.2d at 783. At all times after his escape, Fisher could have avoided *any* danger by peacefully surrendering himself to law enforcement authorities. Instead, he stole a sawed-off shotgun and shot at the first person he suspected of entering his barricaded mobile home hideout.

Appellate counsel stated in her affidavit, introduced as evidence at the post-conviction evidentiary hearing, that she did not raise any point in Fisher's direct appeal concerning the trial court's refusal to instruct the jury on self-defense because she reviewed the trial record and court documents, discussed the case with her supervisor, and raised the only issue which she believed may have resulted in prejudice to Fisher. Fisher has not shown that his appellate counsel failed to raise a claim of error that a competent and effective lawyer would have recognized and asserted on appeal. *Tisius*, 183 S.W.3d at 215. Fisher has not shown that he was prejudiced by appellate counsel's failure to brief the issue or that had appellate counsel raised this claim on appeal " 'the result of the proceeding would have been different.' " *Storey*, 175 S.W.3d at 150 (quoting *Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

■ Thus, the motion court clearly erred in granting Fisher's request for post-conviction relief on the basis that appellate counsel erred in failing to raise as error the trial court's refusal to submit to the jury an instruction on self-defense for the counts relating to assault of a law enforcement officer in the first degree.

Point I is granted.

## Point II—Refusal to Submit Lesser–Included Offense Instruction

■ In its second Point on appeal, the State asserts that the motion court clearly erred in granting post-conviction relief based on Fisher's claim that his appellate counsel was ineffective for failing to raise as error, on direct appeal, the trial court's refusal to submit to the jury an instruction on the lesser-included offense of assault of a law enforcement officer in the second degree for the counts relating to assault of a law enforcement officer in the first degree. The State claims that there was no meritorious basis for appellate counsel to assert such a claim because: (i) there was no basis for the jury to acquit Fisher of first-degree assault of a law enforcement officer because Fisher testified that he shot a shotgun at an approaching person multiple times from close range, and (ii) Fisher was not prejudiced by the lack of the instruction because there was overwhelming evidence that he attempted to kill or cause serious physical injury. We agree.

The test to be applied to determine whether an offense is a lesser-included offense is the test established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which is codified at section 556.046 [5] and is known as the same elements test. *Peiffer v. State*, 88 S.W.3d 439, 443 (Mo. banc 2002).

A person commits the crime of assault of a law enforcement officer in the first degree if he "attempts to kill or knowingly causes or attempts to cause serious physical injury to a law enforcement officer." § 565.081.1. "Serious physical injury" is "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 565.002(6). A person commits the crime of assault of a law enforcement officer in the second degree if he "[a]ttempts to cause or knowingly causes physical injury to a law enforcement officer by means of a deadly weapon or dangerous instrument." § 565.082.1(1). "Physical injury" is "physical pain, illness, or any impairment of physical condition." § 556.061(20).

■ Assault of a law enforcement officer in the second degree is a lesser-included offense of assault of a law enforcement officer in the first degree, *Hill v. State*, 181 S.W.3d 611, 621 (Mo.App. W.D.2006); the distinguishing element between the two crimes is that first-degree assault requires that the defendant intended to cause death or serious physical injury to a law enforcement officer, while second-degree assault requires that the defendant intended to cause physical injury to a law enforcement officer. *Id.* at 620–21; *compare* MAI–CR 3d 319.32, assault of a law enforcement officer in the first degree, *with* MAI–CR 3d 319.34, assault of a law enforcement officer in the second degree.

5.  Section 556.046 provides:
    1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when
    (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
    (2) It is specifically denominated by statute as a lesser degree of the offense charged; or
    (3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.
    2. The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

The motion court determined that appellate counsel was ineffective for failing to raise as error the trial court's refusal to instruct the jury on lesser-included offenses—specifically of assault of a law enforcement officer in the second degree—stating that "[i]f there is any doubt regarding the evidence[,] an instruction should be given on the lower degree of the offense, leaving it to the jury to decide which of the offenses the defendant is guilty, if any," and "[a]n accused is entitled to an instruction on any theory that the evidence tends to establish." Although this general proposition is correct, "[a] trial court is not required to instruct on a lesser included offense unless the jury has a basis to (1) acquit of the offense charged, and (2) convict of the lesser offense." *Hill*, 181 S.W.3d at 620; § 556.046.2. Furthermore:

In order for there to be a basis for an acquittal of the greater offense, there must be some evidence that an essential element of the greater offense is lacking and the element that is lacking must be the basis for acquittal of the greater offense and the conviction of the lesser.

*Hill*, 181 S.W.3d at 620 (quoting *State v. Pond*, 131 S.W.3d 792, 794 (Mo. banc 2004)).

■ There was no error in the trial court's refusal to instruct on the lesser-included offense of assault of a law enforcement officer in the second degree because the facts testified to by Fisher would not have supported an acquittal of assault of a law enforcement officer in the first degree. The facts did not support an inference that Fisher only intended to cause physical injury; rather, the facts established that he intended to kill or cause serious physical injury. *Hill*, 181 S.W.3d at 621. During the gun-fight, Fisher and Sanford both fired a sawed-off shotgun at the law enforcement officers, shooting all five. Even though all the officers sur-

vived, at least two officers were seriously and permanently injured. *Fisher*, 45 S.W.3d at 514. This constituted ample evidence for the jury to find that Fisher intended to cause the officers "serious physical injury."

■ In addition, "[t]he failure to give a different lesser-included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and *one* lesser-included offense are given and the defendant is found guilty of the greater offense." *State v. Johnson*, 284 S.W.3d 561, 575 (Mo. banc 2009). Fisher requested, and the trial court submitted, instructions for the lesser-included offense of assault in the first degree. Thus, the trial court's failure to give instructions for the different lesser-included offense of assault of a law enforcement officer in the second degree was not erroneous or prejudicial because the jury was instructed as to a lesser-included offense and found Fisher guilty of the greater offense. *Id.* at 576.

Appellate counsel stated in her affidavit, introduced as evidence at the post-conviction evidentiary hearing, that she did not raise any point in Fisher's direct appeal concerning the trial court's refusal to instruct the jury on the lesser-included offense of assault of a law enforcement officer in the second degree because she reviewed the trial record and court documents, discussed the case with her supervisor, and raised the only issue which she believed may have resulted in prejudice to Fisher. Fisher did not present the motion court with any evidence that would rebut the presumption that counsel exercised reasonable professional judgment in reaching this conclusion. *Johnson v. State*, 283 S.W.3d 279, 283 (Mo. App. S.D.2009). Fisher's appellate counsel was not acting unreasonably by not raising the denied lesser-included offense instruction issue on appeal—and Fisher

cannot show a reasonable probability that the outcome would have been different if she had—because the trial court's refusal to give the proffered instruction was correct. *Id.*

Thus, the motion court clearly erred in granting Fisher's request for post-conviction relief on the basis that appellate counsel erred in failing to raise as error the trial court's refusal to submit to the jury an instruction on the lesser-included offense of assault of a law enforcement officer in the second degree for the counts relating to assault of a law enforcement officer in the first degree.

Point II is granted.

### Conclusion

Our full review of the record definitely and firmly reveals that the motion court clearly erred. Thus, the motion court's judgment is reversed and vacated. Fisher's convictions are ordered reinstated.

VICTOR C. HOWARD and CYNTHIA L. MARTIN, Judges, concur.

