

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | **WD75765** |
| Respondent, | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | |
| CHANE EDWARD NUTT, | ) | **March 25, 2014** |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cooper County, Missouri**
**Honorable Robert Lawrence Koffman, Judge**

**Before Division Three:  Anthony R. Gabbert, P.J.,**
**Victor C. Howard, and Thomas H. Newton, JJ.**

Mr. Chane Edward Nutt appeals his conviction of first-degree assault, section 565.050.1[1]

He challenges the trial court's refusal of his jury instructions.  We reverse and remand.

### Factual and Procedural Background

In December 2010, Mr. Nutt and Mr. Joshua Michael Durbin were inmates at a jail.  Mr.

Nutt and Mr. Durbin quarreled with each other in front of Mr. Durbin's cell.  Mr. Nutt walked

away from Mr. Durbin and was on the stairs when Mr. Durbin called him an epithet.  In response,

Mr. Nutt turned around suddenly, threw up the papers that he was holding, and left the steps.  He

grabbed Mr. Durbin's neck, and pushed Mr. Durbin into a bunk bed in Mr. Durbin's cell; the cell

door closed and locked.  With his hand still around Mr. Durbin's throat, Mr. Nutt shoved him

---

[1] Statutory references are to RSMo 2000 and the Cumulative Supplement 2010.

against the concrete wall. Mr. Durbin shoved Mr. Nutt off him, but Mr. Nutt again pushed him to the wall. "[H]e leaned all his body weight into the choke."

Soon after, a guard entered the holding area; he had observed Mr. Nutt's swift movement down the stairs on the monitor in the security room. Before the cell door opened, he observed Mr. Nutt choking Mr. Durbin from a window in the cell door. He then entered the cell and ordered Mr. Nutt to release Mr. Durbin. Mr. Nutt readily complied. The choke lasted 15 to 30 seconds. The guard noticed that Mr. Durbin was bright red and appeared breathless during the choking. The jail's monitoring system had captured the entire incident on video.[2]

The guard ordered Mr. Nutt to return to his cell and escorted Mr. Durbin to another holding area. On the walk there, the guard took pictures of the red marks around Mr. Durbin's neck. The guard also noticed that Mr. Durbin spoke to him in a raspy voice. The guard wrote a report about the incident.

The next day, which was 18 hours later, Deputy Brian Weber of the Sheriff's Office conducted a routine investigation. Deputy Weber watched a partial recording of the incident and interviewed Mr. Nutt and Mr. Durbin, respectively. Mr. Nutt told Deputy Weber that his hands slipped off Mr. Durbin's shoulders and went toward his neck, but that he did not purposefully choke Mr. Durbin. Mr. Durbin told Deputy Weber that Mr. Nutt choked him, but Mr. Durbin did not tell him that he could not breathe. Deputy Weber inspected Mr. Durbin's head and did not find any injuries. Deputy Weber charged Mr. Durbin with third-degree assault. Mr. Nutt and Mr. Durbin were placed in lockdown for fifteen days each. The State later charged Mr. Nutt with first-degree assault. The charge alleged that Mr. Nutt "attempted to cause serious physical injury to [Mr.] Durbin . . . by . . . choking him."

---

[2] Although the monitoring system had videotaped the incident, the recording of the monitoring system malfunctioned. The malfunction resulted in the recording of only a part of the monitoring system's video.

2

At a jury trial, the above facts were adduced from Mr. Durbin, Deputy Weber, and the guards in the security room. The partial recording was played for the jury. Mr. Nutt did not present any witnesses to support his defense. At the instruction conference, Mr. Nutt requested that the trial court submit a lesser-included instruction of third-degree assault. He offered two third-degree assault instructions. The trial court refused the instructions on the ground that the proffered instructions were not lesser included offenses of first-degree and second-degree assault. Instead, the trial court submitted instructions for first-degree assault and the lesser included offense of second-degree assault.

The jury found Mr. Nutt guilty of first-degree assault. Mr. Nutt filed a motion for judgment of acquittal notwithstanding the verdict, or in the alternative, a new trial. The trial court heard arguments for relief under the alleged errors, including the instructional error. The trial court overruled the motion. Mr. Nutt was sentenced to ten years of imprisonment to run concurrently with his current sentence. Mr. Nutt appeals, raising two points.

## Legal Analysis

In his first point, Mr. Nutt argues that the trial court erred in refusing his jury instructions for third-degree assault, a lesser included offense of first- and second-degree assault. Mr. Nutt claims that under section 556.046, his instruction for third-degree assault should have been submitted because a basis existed to convict him of that lesser included offense and a basis existed to acquit him of the greater offenses of first- and second-degree assault.

Section 556.046.2 states that a defendant is entitled to an instruction of a lesser included offense if there "is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." A lesser included offense includes an offense that "is established by proof of the same or less than all the facts required to establish the commission of

3

the offense charged" or "is specifically denominated by statute as a lesser degree of the offense charged." § 556.046.1(1), (2).[3] The evidence is viewed in the light most favorable to the defendant, which "in fact or by inference, provides a basis for both an acquittal of the greater offense and a conviction on the lesser offense." *State v. Frost*, 49 S.W.3d 212, 214, 216 (Mo. App. W.D. 2001). "If the evidence supports differing conclusions, the judge must instruct on each. A trial court should err on the side of caution." *State v. Pond*, 131 S.W.3d 792, 794 (Mo. banc 2004) (internal citation omitted).

The law recognizes third-degree assault to be a lesser included offense of first- and second-degree assault. *State v. Hibler*, 5 S.W.3d 147, 151 (Mo. banc 1999) (applying subsection 556.046.1(2)). Additionally, Mr. Nutt was charged with first-degree assault under section 565.050.1 for "attempt[ing] to cause serious physical injury to another person," and the proffered basis for third-degree assault was under section 565.070.1(1) for "attempt[ing] to cause . . . physical injury to another person." Consequently, the degree of the physical injury that the actor intended to cause is the distinction between the lesser included offense of third-degree assault and first-degree assault. *See* §§ 565.050.1; 565.070.1(1). While first-degree assault requires *serious* physical injury, the proffered basis for third-degree assault requires only physical injury. *See State v. Bruce*, 53 S.W.3d 195, 202-03 (Mo. App. W.D. 2001) (finding refusal of third-degree instruction was proper because the evidence did not support an inference of "physical injury" because the injuries sustained were serious). Because all of the facts of third-degree assault are then included in those necessary to prove the commission of first-degree assault, third-degree assault is also a lesser included offense of that in the first degree under section 556.046.1(2)).

---

[3] Section 556.046.1(3) also provides that a lesser included offense is included when "[i]t consists of an attempt to commit the offense charged or to commit an offense otherwise included therein."

Here, Mr. Nutt was charged with first-degree assault for attempting "to cause serious physical injury to [Mr.] Durbin, by choking him." To acquit on this offense, the jury needed to have a reasonable doubt that Mr. Nutt choked Mr. Durbin to cause him serious physical injury. Thus, to convict Mr. Nutt of third-degree assault for choking Mr. Durbin, the jury needed to believe that Mr. Nutt did so to cause only physical injury. A "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body" is a "[s]erious physical injury." § 565.002(6); *see also Hibler*, 5 S.W.3d at 149.

The evidence, viewed in the light most favorable to Mr. Nutt, showed that he choked Mr. Durbin for 15 to 30 seconds, to the point where Mr. Durbin turned red in the face and had a raspy voice. The red marks on Mr. Durbin's neck disappeared within 18 hours. Mr. Durbin did not request or receive medical treatment. Additionally, Mr. Nutt's statement to Deputy Weber indicated that while Mr. Nutt intended to grab Mr. Durbin by the shoulders, he did not intend to choke Mr. Durbin around the neck. As the trial court here stated, choking someone *per se* does not amount to an attempt to kill or to cause serious physical injury. *See Hibler*, 5 S.W.3d at 151 (finding a refusal of a third-degree instruction was improper because the evidence that the victim was choked for 20 to 30 seconds "was sufficient proof of an attempt to cause physical injury to the victim" and not an attempt to cause *serious* physical injury); *cf. State v. Greer*, 348 S.W.3d 149, 156 (Mo. App. E.D. 2011) (finding a refusal of third-degree instruction was proper because no evidence supported anything less than an attempt to cause serious injury, due to the defendant's comments and the weapon used during the attack). The jury could have thus determined that Mr. Nutt was not attempting to cause Mr. Durbin *serious* physical injury, but only physical injury. Accordingly, evidentiary bases existed to acquit Mr. Nutt of first-degree

assault and to convict him of third-degree assault. The trial court thus erred in refusing the third-degree assault instruction.

The State argues that, even if this is so, Mr. Nutt was not prejudiced because the jury convicted Mr. Nutt of first-degree assault, although it had the option to convict him of the lesser included offense of second-degree assault. The State relies on *State v. Johnson*, which held that the failure to give two instructions for lesser included offenses was neither erroneous nor prejudicial because the jury had already rejected a lesser included offense when it returned a guilty verdict for first-degree murder. 284 S.W.3d 561, 575-76 (Mo. banc 2009). The State claims that here the submission of the second-degree assault instruction tested the jury's resolve because "it provid[ed] the jury with a lesser offense on which to convict if, in fact, it [was] not convinced beyond a reasonable doubt as to the greater offense." We disagree with the State.

In *Frost*, we acknowledged and applied an exception to this general rule. 49 S.W.3d at 219-20. The trial court in *Frost*, instructed on second-degree murder, voluntary manslaughter, and self-defense, but it refused to instruct on involuntary manslaughter. *Id.* at 219. The jury found the defendant guilty of second-degree murder. *Id.* at 216. We determined that the refusal of the involuntary manslaughter instruction was improper because the facts supported its submission. *Id.* at 214. The State argued that the general rule applied and no prejudice thus existed from the refusal because had the instruction been submitted, "no reasonable basis exist[ed] to believe that the jury would have exercised even greater leniency and convicted her of involuntary manslaughter." *Id.* at 218. We disagreed because the facts of the case did not fit the rule's rationale that prejudice cannot exist from the failure to instruct on a lesser offense since the instructions submitted to the jury for the greater and a lesser offense adequately tested the elements of the greater offense. *Id.* at 219 (citing *State v. Jones*, 979 S.W.2d 171 (Mo. banc

6

1998)); *see also State v. Glass*, 136 S.W.3d 496, 515 (Mo. banc 2004). We noted that the second-degree murder and voluntary manslaughter instructions asked whether the defendant acted purposefully and that the sole different element between the two was whether the defendant did so under the influence of sudden passion. *Id.* at 219-20. However, the proffered involuntary manslaughter instruction asked whether the defendant acted purposefully in causing the victim's death, but did so "with 'an unreasonable belief'" in using deadly force to preserve her life. *Id.* at 220. We concluded that because the instruction offered a basis that had not been before the jury and thus had yet to be rejected, "a reasonable basis exist[ed] upon which the jury could have exercised greater leniency." *Id.* at 221. We, therefore, could not conclude that "the jury was adequately tested on the elements of second-degree murder to the extent that submission of involuntary manslaughter would have made no difference," and remanded the case for a new trial. *Id.* at 221.

Likewise, in this case, the elements of first-degree assault were not adequately tested. The proffered third-degree assault instruction asked whether Mr. Nutt attempted to cause physical injury. The submitted first- and second-degree assault instructions did not ask that question, but rather asked whether Mr. Nutt's attempt to cause serious physical injury was done with sudden passion. Because the jury did not have before it a question of whether Mr. Nutt intended his actions to cause only physical injury, we cannot conclude that the elements of first-degree assault were adequately tested by the second-degree assault instruction. Accordingly, Mr. Nutt was prejudiced by the trial court's refusal of his instruction for third-degree assault under section 565.070.1(1), and his conviction and sentence are reversed. Mr. Nutt's first point is granted.[4]

---

[4] Because of our disposition of the first point, Mr. Nutt's second point is not addressed.

## Conclusion

Therefore, we reverse the trial court's judgment and remand the case for a new trial.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge

Gabbert, P.J., and Howard, J. concur.