**STATE of Missouri, Respondent,**

v.

**Nathan Wayne JENSEN, Appellant.**

No. SC 95280

Supreme Court of Missouri,
en banc.

Opinion issued July 11, 2017

Jensen was represented by Amy M. Bartholow of the public defender's office in Columbia, (573) 777-9977.

The state was represented by Shaun J. Mackelprang of the attorney general's office in Jefferson City, (573) 751-3321.

PATRICIA BRECKENRIDGE, JUDGE

Nathan Jensen appeals a judgment convicting him of one count of murder in the second degree, section 565.021.1,[1] one count of armed criminal action, section 571.015, and one count of abandonment of a corpse, section 194.425. Mr. Jensen was sentenced to life imprisonment on the murder conviction, five concurrent years on

---

**1.** All statutory citations are to RSMo 2000, unless otherwise indicated.

the count of armed criminal action, and four consecutive years on the count of abandonment of a corpse. The trial court instructed the jury on second degree murder and voluntary manslaughter. The trial court erred by refusing Mr. Jensen's properly requested instruction on the nested lesser included offense of involuntary manslaughter. The instructional error is prejudicial because the omitted involuntary manslaughter instruction would have directly tested whether Mr. Jensen acted "recklessly" as opposed to "knowingly." Therefore, Mr. Jensen's convictions for second degree murder and the corresponding charge of armed criminal action are reversed.

The circuit court's instructional error does not mandate reversal of Mr. Jensen's conviction for abandonment of a corpse because that conviction was not predicated on the second degree murder conviction. Mr. Jensen's other claims that the trial court erred in failing to declare a mistrial due to the admission of evidence of uncharged misconduct, comments the defendant had "gangster tattoos all over him," and the emotional outburst of the victim's mother are without merit, and his conviction for abandonment of a corpse is affirmed. The case is remanded for further proceedings consistent with this opinion.

### Factual and Procedural Background

In early December 2011, Nathan Jensen and Christopher Jorgensen got into a "texting war" with Kenny Stout and Shon Gossett because Mr. Gossett believed Mr. Jensen was "messing with" his 16-year-old cousin. The conflict culminated in a fight between Mr. Stout and Mr. Jensen. Mr. Jorgensen stepped in and hit Mr. Stout, knocking him unconscious. Mr. Jorgensen and Mr. Jensen beat Mr. Stout with their fists and baseball bats and stomped on his head, chest, and midsection. They dragged Mr. Stout into the woods and left him for dead. The next day, Mr. Jensen and Mr. Jorgensen drove back to where they had left Mr. Stout to "make sure he was gone." They discovered Mr. Stout was still breathing. Mr. Jorgensen had brought a hunting knife with him and proceeded to stab Mr. Stout multiple times and attempted to cut his throat. Mr. Jorgensen would eventually testify both he and Mr. Jensen stabbed Mr. Stout, a claim that Mr. Jensen denied in statements to law enforcement and at trial.

Concerned Mr. Jensen would not be able to "keep his mouth shut," Mr. Jorgensen decided to kill Mr. Jensen. He told Mr. Jensen he could hide out at the Texas County home of Judy Greuter. After they arrived at Ms. Greuter's property, Mr. Jorgensen tried to shoot Mr. Jensen with Ms. Greuter's gun, but it misfired twice. Mr. Jensen ran off into the woods and eventually went to a neighbor, who called 911. When law enforcement arrived, Mr. Jensen said that someone had tried to kill him and that he had information about a missing boy. He asked for protection from Mr. Jorgensen and was placed in protective custody until Mr. Jorgensen was arrested. Initially, Mr. Jensen gave law enforcement little information about Mr. Stout, but eventually he led authorities to the location of Mr. Stout's body. In his statements to the police and in his trial testimony, Mr. Jensen maintained he acted under duress from Mr. Jorgensen.

The state charged Mr. Jensen, as a persistent offender, with murder in the first degree, armed criminal action, and abandonment of a corpse. As related to the alleged homicide, the trial court instructed the jury on first degree murder, second degree murder, and voluntary manslaughter. The trial court instructed the jury that duress was an affirmative defense to the voluntary manslaughter charge. The trial

court refused Mr. Jensen's timely request to instruct the jury on the lesser included offense of involuntary manslaughter.

The jury convicted Mr. Jensen of the second degree murder, armed criminal action, and abandonment of a corpse. Mr. Jensen appeals. This Court granted transfer following an opinion by the court of appeals. Mo. Const. art. V, sec. 10.

### Error in Refusing to Instruct on Involuntary Manslaughter

█ Mr. Jensen's first point asserts the trial court committed reversible instructional error by refusing his request to instruct the jury on the nested lesser included offense of involuntary manslaughter. Mr. Jensen is correct.

█ Section 556.046, RSMo Supp. 2002, defines the trial court's obligation to instruct on lesser included offenses. In pertinent part, section 556.046.2, RSMo Supp. 2002, provides, "The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Section 556.046.3, RSMo Supp. 2002, further provides:

> The court shall be obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense.

Collectively, sections 556.046.2 and 556.046.3, RSMo Supp. 2002, obligate a trial court to instruct the jury on a "lesser included offense" when: (1) "a party timely requests the instruction," (2) "there is a basis in the evidence for acquitting the defendant of the charged offense," and (3) "there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested." *State v. Jackson*, 433 S.W.3d 390, 396 (Mo. banc 2014).[2]

The *Jackson* analysis of nested lesser included offenses focuses on offenses charged, not the evidence in the case. Consistent with the more detailed analysis in *State v. Sanders*, SC94865, 522 S.W.3d 212, 2017 WL 2952318 (Mo. banc July 11, 2017), handed down contemporaneously with this opinion, analyzing the elements of second degree murder, as defined by section 565.021.1(1), and involuntary manslaughter, as defined by section 565.024.1(1), demonstrates involuntary manslaughter is a nested lesser included offense of second degree murder. In pertinent part, section 565.021.1(1) provides, "A person commits the crime of murder in the second degree if he [or she] ... [k]nowingly causes the death of another person." Section 565.024.1(1) provides, "A person commits the crime of involuntary manslaughter in the first degree if he [or she] ... [r]ecklessly causes the death of another person."

The differential element distinguishing the two offenses is that second degree murder requires the state to prove the defendant acted "knowingly" instead of "recklessly." Section 562.021.4 provides,

---

**2.** Section 556.046.2(2), RSMo Supp. 2002, provides "[a]n offense is charged for purposes of this section" if it is "submitted to the jury because there is a basis for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense." Therefore, "a trial court may be obli-

gated to give multiple lesser included offense instructions because the first-level included offense is both a 'charged offense' under section 556.046.2 and a 'higher included offense' under section 556.046.3." *Jackson*, 433 S.W.3d at 396 n.6.

"When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposefully or knowingly." The fact that the culpable mental state of recklessness is, by statute, subsumed within the culpable mental state of knowingly means it was *"impossible* [for Mr. Jensen] *to commit* the greater [offense of second-degree murder] without *necessarily committing"* the nested lesser included offense of involuntary manslaughter. *Jackson*, 433 S.W.3d at 404 (emphasis in original). As charged in this case, involuntary manslaughter is, therefore, a nested lesser included offense of second degree murder. *State v. Ramirez*, 479 S.W.3d 640, 645 (Mo. App. 2015). The trial court erred by failing to instruct the jury on involuntary manslaughter as properly requested by Mr. Jensen and required by section 556.046, RSMo Supp. 2002.

### Instructional Error was Prejudicial

 "[P]rejudice is presumed when a trial court" erroneously refuses to give a properly requested instruction on a nested lesser included offense. *Jackson*, 433 S.W.3d at 395 n.4.[3] In *Jackson*, "[t]he trial court refused to instruct the jury on [any] lesser included offense[s]." *Id.* at 394. *Jackson*, therefore, does not expressly provide the framework for analyzing the presumption of prejudice in cases such as this

when the trial court erroneously refused to instruct the jury on a nested lesser included offense and the jury convicted the defendant of the greater offense while rejecting the option of convicting the defendant of another non-nested lesser included offense.

The state argues the presumption of prejudice outlined in *Jackson* was rebutted in this case because the jury rejected the option of convicting Mr. Jensen of the lesser included offense of voluntary manslaughter and, instead, convicted him of the greater offense of second degree murder. The state asserts there is no prejudice under these circumstances because Mr. Jensen's conviction on the greater offense of second degree murder negates any reasonable probability the jury would have convicted him of involuntary manslaughter, if given the option. The state relies on *State v. Johnson* for the proposition that "[t]he failure to give a different lesser-included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and *one* lesser-included offense are given and the defendant is found guilty of the greater offense." 284 S.W.3d 561, 575 (Mo. banc 2009) (citing *State v. Glass*, 136 S.W.3d 496, 515 (Mo. banc 2004)). Contrary to the state's argument, the analysis of prejudice

**3.** The state also argues Rule 28.02(f) precludes a presumption of prejudice because the rule requires prejudice resulting from instructional error "to be judicially determined." This Court does not presume improper instructions yield a proper verdict. The general rule is that instructional error creates a rebuttable presumption of prejudice. For instance, in *State v. Westfall*, 75 S.W.3d 278, 284 (Mo. banc 2002), this Court reasoned that when a trial court fails to instruct the jury as required by the MAI, "[s]uch errors are presumed to prejudice the defendant *unless it is clearly established by the State that the error did not result in prejudice."* (Emphasis added) (internal quotation omit-

ted). Likewise, in *Jackson*, this Court noted a conviction will be reversed for instructional error only if "there is a reasonable probability that the trial court's error affected the outcome of the trial." *Jackson*, 433 S.W.3d at 395 n.4 (internal quotation omitted). The fact that a conviction will be reversed only if there is a "reasonable probability" the error affected the outcome demonstrates the presumption of prejudice is rebuttable. The rebuttable presumption of prejudice noted in *Jackson* is not inconsistent with a judicial determination of prejudice. It is, instead, an integral part of the judicial determination of prejudice pursuant to Rule 28.02(f).

in *Johnson* is consistent with *Jackson* and supports Mr. Jensen's argument that he was prejudiced by the trial court's failure to instruct the jury on the nested lesser included offense of involuntary manslaughter.

In *Johnson*, the trial court instructed the jury on first degree and second degree murder but refused to instruct on "second-degree murder without sudden passion and voluntary manslaughter." *Id.* at 575. The jury convicted the defendant of first degree murder. *Id.* at 568. *Johnson* cited *Glass* for the proposition that the failure to give a second lesser included offense instruction is not prejudicial when the defendant is convicted of the greater offense. *Glass*, however, did not hold there is never prejudice when a defendant is convicted of a greater offense and the trial court instructed the jury on any single lesser included offense. Instead, *Glass* held that a defendant convicted of first degree murder is not prejudiced by the trial court's refusal to instruct on lesser included offenses other than second degree murder because the "jury has already been given an opportunity to reject the element of deliberation and did not do so." *Glass*, 136 S.W.3d at 515; *see also State v. Griffin*, 756 S.W.2d 475, 485 (Mo. banc 1988) ("It is a second degree conventional murder instruction, not a second degree felony murder instruction, which sufficiently tests a jury's belief of the crucial facts for a conviction of first degree murder."). The unstated reason there was no prejudice in *Johnson*, *Glass*, and similar cases is because second degree murder is a nested lesser included offense

of first degree murder.[4] By convicting the defendant of first degree murder instead of the nested lesser included offense of second degree murder, the juries in *Johnson* and *Glass* necessarily and completely rejected the possibility of a conviction on any lesser homicide offense because "the conventional second-degree murder instruction that was given at trial already 'tested' the element of deliberation required for a first-degree murder conviction." *Briggs v. State*, 446 S.W.3d 714, 720 n. 9 (Mo. App. 2014) (citing *State v. Nutt*, 432 S.W.3d 221, 224-25 (Mo. App. 2014)); *see also State v. Payne*, 488 S.W.3d 161, 166 (Mo. App. 2016) (holding a defendant convicted of first degree murder was not prejudiced by the trial court's refusal to instruct on voluntary manslaughter because the instruction would not have tested the element of deliberation).

The testing the elements approach, employed *sub silencio* in *Johnson* and expressly in *Glass*, is implicit in the *Jackson* rationale. As noted, *Jackson*, 433 S.W.3d at 401, holds that trial courts are required to give properly requested nested lesser included offense instructions because there is always a "basis in the evidence" for acquitting the defendant of the greater offense and convicting on the lesser offense. The reason for this requirement is twofold: it is impossible to commit the greater offense without committing the lesser offense, and the jury is free to believe or disbelieve the evidence presented. *Id.*; *State v. Pierce*, 433 S.W.3d 424, 430 (Mo. banc 2014). Because the elements of the nested lesser included offense are sub-

---

4. First degree murder is defined as knowingly causing the death of another person after deliberation. Section 565.020.1. Second degree murder is defined as knowingly causing the death of another person. Section 565.021.1(1). The sole differential element distinguishing the two offenses is that first degree murder requires the state to prove

deliberation. According to the *Jackson* analysis, second degree murder is, therefore, a nested lesser included offense of first degree murder because it consists of a subset of the elements of the greater offense and is separated from the greater offense by one differential element for which the state bears the burden of proof. *Jackson*, 433 S.W.3d at 404.

sumed within the greater offense and the jury is the sole finder of fact, an appellate court cannot analyze prejudice by assessing the strength of the evidence without essentially accomplishing what *Jackson* specifically prohibits—a "directed verdict on the differential element." *Jackson*, 433 S.W.3d at 401. Therefore, consistent with existing case law, the *Jackson* rationale compels the conclusion that the erroneous failure to instruct on a nested lesser included offense is prejudicial when the "lesser offense that was actually submitted at trial did not 'test' the same element of the greater offense that the omitted lesser offense would have challenged." *Briggs*, 446 S.W.3d at 720 n.9 (Mo. App. 2014); *State v. Frost*, 49 S.W.3d 212, 219-20 (Mo. App. 2001).[5]

■ The state has not rebutted the presumption of prejudice resulting from the trial court's erroneous failure to instruct the jury on the nested lesser included offense of involuntary manslaughter. The instructions for second degree murder and voluntary manslaughter required the jury to determine whether Mr. Jensen knowingly caused Mr. Stout's death. While section 565.025 provides that voluntary manslaughter is a lesser included offense of second degree murder, it is not a nested lesser included offense. *Payne*, 488 S.W.3d at 164. The differential element is that voluntary manslaughter requires the jury

to find that the defendant acted under a sudden passion arising from adequate cause. Section 565.023. Accordingly, it is possible to commit a second degree murder by knowingly causing the victim's death without also acting under a "sudden passion" and committing the offense of voluntary manslaughter. "By convicting on second-degree murder, and not voluntary manslaughter, the jury determined that [Mr. Jensen] did not cause [Mr. Stout's] death under the influence of sudden passion arising from adequate cause." *Frost*, 49 S.W.3d at 220. The voluntary manslaughter instruction did not directly test whether Mr. Jensen acted knowingly instead of recklessly. Under these circumstances, this Court "cannot say that the jury was adequately tested on the elements of second-degree murder to the extent that submission of involuntary manslaughter would have made no difference." *Id.* at 221. Therefore, the state has not rebutted the presumption of prejudice resulting from the trial court's erroneous refusal to instruct the jury on the nested lesser included offense of involuntary manslaughter. Mr. Jensen's convictions for second degree murder and the corresponding charge of armed criminal action are reversed.

The reversal of Mr. Jensen's convictions for second degree murder and armed criminal action do not impact his conviction for

---

5. Analysis of the trial court's obligation to instruct the jury on properly requested nested lesser included offenses differs from the analysis of prejudice resulting from the failure to submit a properly requested instruction. The trial court's obligation to instruct is prospective in that it provides the jury with a complete framework for reaching its verdict. The prejudice analysis, however, is retrospective in that it looks back to the jury's verdict as an objective data point that focuses the analysis on whether "there is a reasonable probability that the trial court's error affected the outcome of the trial." *Jackson*, 433 S.W.3d at 395

n.4. For instance, if a jury convicts a defendant of an offense requiring proof the defendant acted "knowingly" and rejects a nested lesser included offense requiring proof the defendant acted "recklessly," the defendant is not prejudiced by the court's erroneous failure to instruct the jury on a nested lesser included offense based on negligent conduct. In that case, the presumption of prejudice is rebutted because the jury's verdict objectively demonstrates rejection of the facts and inferences necessary to convict the defendant of engaging in criminal negligence.

abandonment of a corpse. Consequently, this Court will address Mr. Jensen's remaining points on appeal.

## Uncharged Misconduct

■ Mr. Jensen's second point asserts the trial court abused its discretion by overruling his request for a mistrial and, instead, instructing the jury to disregard evidence of uncharged misconduct. The decision to declare a mistrial is within the discretion of the trial court because it is in the best position to determine whether the alleged incident had a prejudicial effect on the jury. *State v. Blurton*, 484 S.W.3d 758, 779 (Mo. banc 2016).

■ " 'Evidence of prior uncharged misconduct is inadmissible for the sole purpose of showing the propensity of the defendant to commit such acts.' " *State v. Miller*, 372 S.W.3d 455, 473 (Mo. banc 2012) (quoting *State v. Gilyard*, 979 S.W.2d 138, 140 (Mo. banc 1998)). Evidence of uncharged misconduct "may be admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). Evidence of uncharged misconduct may also be admitted "to present a complete and coherent picture" of the circumstances of the charged offense. *Id.* (internal quotation omitted).

The evidence at issue was admitted when the state asked Mr. Gossett about text messages exchanged with Mr. Jensen. Mr. Gossett replied that Mr. Jensen was "messing with my 16-year-old cousin." The trial court sustained defense counsel's objection that the statement was inadmissi-

ble evidence of prior uncharged misconduct or bad acts.

The state then asked Mr. Gossett if he knew Mr. Jensen's age. Mr. Gossett replied, "I knew he was too old to be with my 16-year-old cousin." The state again asked Mr. Gossett if knew Mr. Jensen's age. Mr. Gossett replied, "I don't know." After the question regarding Mr. Jensen's age was again asked and answered, defense counsel objected and requested a mistrial. The trial court overruled Mr. Jensen's request for a mistrial and admonished the jury to disregard Mr. Gossett's "last statement by the witness in total, the last sentence that he made."

■ "The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes." *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Vague and indefinite references to misconduct do not warrant a mistrial unless the reference is clear evidence of the defendant's involvement in another crime. *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989). "The defendant's association with other crimes must be clear and definite to run afoul of the general rule of inadmissibility." *State v. Slagle*, 206 S.W.3d 404, 410 (Mo. App. 2006).

The cases cited by Mr. Jensen illustrate the required "clear and definite" association with uncharged criminal acts while undercutting his argument that the trial court erred by overruling his request for a mistrial. For instance, in *State v. Watson*, the court held that a defendant charged with leaving the scene of an accident "was harmed by the admission of evidence that he assaulted his wheelchair-bound mother in order to take her social security money." 968 S.W.2d 249, 254 (Mo. App. 1998).

The court also observed the evidence of the uncharged misconduct was "extensive." *Id.* Similarly, in *State v. Taylor*, the defendant was charged with drug possession, and the state "elicited the details" of the defendant's alleged assault of his girlfriend. 739 S.W.2d 220, 222 (Mo. App. 1987). During closing argument, the state referred to the defendant as a "wife beater" and thereby "poured salt into the wound, compounding the prejudice." *Id.* at 224. Accordingly, in *Watson* and *Taylor*, the courts found the requisite "clear and definite" association with prior uncharged criminal acts when the trial court erroneously permitted the state to introduce extensive evidence of prior and unambiguously criminal acts by the defendant.

Mr. Jensen's case is readily distinguishable from *Watson* and *Taylor*. Mr. Gossett's limited testimony that Mr. Jensen was "messing with" and "too old to be with" his 16-year-old cousin does not clearly and definitely associate Mr. Jensen with another crime or crimes. There was no description or explanation of Mr. Jensen's conduct with Mr. Gossett's cousin. Mr. Gossett's unclear and indefinite references to Mr. Jensen's interactions with the girl amounted to the type of "[v]ague references to other uncharged crimes that are insufficient to warrant reversal for trying a defendant for uncharged crimes." *Slagle*, 206 S.W.3d at 410. Therefore, Mr. Jensen has not established that Mr. Gossett's testimony constituted inadmissible evidence of other crimes or that the trial court abused its discretion by declining to declare a mistrial or offer a more detailed curative instruction.

### Sidebar Comments by the Prosecutor

■ Mr. Jensen asserts the trial court plainly erred by failing to declare a mistrial *sua sponte* after the jury overheard the prosecutor state during a sidebar that Mr.

Jensen had "gangster tattoos all over him." The prosecutor referenced Mr. Jensen's tattoos when informing the trial court of his intention to ask Mr. Jensen whether he "acted or portrayed himself as a gangster." Defense counsel objected to the proposed questioning on grounds it would be inadmissible character evidence. The trial court expressed concern that "comments from both sides have been loud enough that the jury on occasion could hear, and it worried me." Defense counsel agreed the jury should not be asked whether they heard the prosecutor's statements, as that would serve to emphasize the statements. Defense counsel agreed with the trial court's decision to admonish the jury to disregard any sidebar statements and to follow the court's instructions.

■ Mr. Jensen acknowledges this claim is subject to plain error review because he did not contemporaneously object and request a mistrial. Rule 30.20. Plain error review is a two-step process. *State v. Walter*, 479 S.W.3d 118, 131 (Mo. banc 2016). "First, the Court determines whether the claim of error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has resulted." *Id.* If the first step is satisfied, the second step requires this Court to determine whether the alleged error actually resulted in manifest injustice. *Id.*

■ Assuming the jurors overheard the comments regarding Mr. Jensen's tattoos, the trial court admonished the jury to disregard those statements, as agreed to by defense counsel. "In the absence of exceptional circumstances, [appellate courts] assume[ ] the jury obey[s] the trial court's directions." *Barlow v. Thornhill*, 537 S.W.2d 412, 422 (Mo. banc 1976); *see State v. Chavez*, 128 S.W.3d 569, 578 (Mo. App. 2004). Mr. Jensen has identified nothing in the record suggesting the assump-

tion is unwarranted in this case. The trial court did not plainly err by failing to *sua sponte* declare a mistrial based on the possibility jurors may have overheard the prosecutor's comments. *State v. Weaver*, 475 S.W.3d 695, 697 (Mo. App. 2015) (no plain error due to an "isolated reference" in closing argument to the defendant's propensity to commit crimes when the trial court immediately admonished the jury it should deliberate on the evidence according to the instructions).

### Emotional Outburst

■■ Mr. Jensen's final point asserts the trial court erred by denying his request for a mistrial after an emotional outburst by Mr. Stout's mother while testifying at trial. The emotional outburst occurred when the prosecutor showed her an exhibit containing a split screen image depicting Mr. Stout while alive and after his death. When she saw the images, she said, "Oh my God" and began to cry. The prosecutor apologized. The trial court ordered a recess. Mr. Jensen requested a mistrial on grounds the exhibit "was purposely used to evoke an inflammatory response." The trial court denied the request for a mistrial. The court noted Mr. Stout had to be identified and found the prosecutor did not use the images to evoke an emotional response. Following the recess, Mr. Stout's mother identified him and apologized for her outburst.

■■ A murder trial is inherently emotional. *State v. Gill*, 167 S.W.3d 184, 196 (Mo. banc 2005). "Although emotional outbursts are to be prevented insofar as possible, the trial court exercises broad discretion in determining the effect of such outbursts on the jury." *State v. Deck*, 994 S.W.2d 527, 539 (Mo. banc 1999). In determining whether an emotional outburst warrants a mistrial, "the trial court may consider the spontaneity of the outburst,

whether the prosecution was at fault, whether something similar, or even worse, could occur on retrial, and the further conduct of the trial." *State v. Brooks*, 960 S.W.2d 479, 491 (Mo. banc 1997).

Mr. Jensen's argument is premised on his assertion the prosecutor purposely attempted to evoke an emotional outburst by failing to prepare Mr. Stout's mother for viewing the exhibit. The record refutes Mr. Jensen's argument. After the trial resumed, Mr. Stout's mother composed herself and she apologized by stating, "I'm sorry. I thought I could do this." The statement "I thought I could do this" implies the prosecutor prepared her to view the exhibit prior to trial. The record indicates the outburst was spontaneous and isolated. The trial court's decision to deny Mr. Jensen's request for a mistrial is supported by the record and, therefore, was not an abuse of discretion.

### Conclusion

The judgments convicting Mr. Jensen for second degree murder and armed criminal action are reversed. The judgment convicting Mr. Jensen for abandonment of a corpse is affirmed. The cause is remanded for further proceedings on the second degree murder and armed criminal action charges.

Draper, Wilson, Russell and Stith, JJ., concur;

Fischer, C.J., concurs in part and dissents in part in separate opinion filed. Powell, J., not participating.

Zel M. Fischer, Chief Justice

Although I concur with the bulk of the majority opinion, I dissent from its conclusion that the State did not rebut the presumption of prejudice arising from the circuit court's failure to give the requested nested lesser-included offense instruction

of involuntary manslaughter. To be sure, *State v. Jackson*, 433 S.W.3d 390 (Mo. banc 2014), does not discuss the various ways the State may overcome the presumption of prejudice. After review of the record in this case, and based on the strength of the evidence in the record, in my view the State overcame the presumption of prejudice and I would affirm Jensen's second-degree murder conviction.[1]

---

1. This would necessarily result in affirming the corresponding armed criminal action con- viction.