

# Missouri Court of Appeals
## Southern District
## Division Two

STATE OF MISSOURI, )
)
              Respondent, )
)
    vs. ) No. SD35330
)
DAVID JOE VANLUE, ) FILED: June 10, 2019
)
              Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF ST. CLAIR COUNTY

Honorable James R. Bickel, Judge

(Before Francis, P.J., Bates, J., and Scott, J.)

### **REVERSED AND REMANDED**

PER CURIAM. A jury found David Vanlue guilty of assault on a law-enforcement officer ("ALO") in the first degree. The state concedes that the trial court erred in not instructing down to second-degree ALO as requested by Vanlue and required by **State v. Jackson**, 433 S.W.3d 390 (Mo. banc 2014). We agree. The sole issue on appeal is prejudice. We address applicable law first.

### *Jackson* Error/*Jensen* Prejudice

Per **Jackson**, 433 S.W.3d at 401,

> the jury's right to disbelieve all or any part of the evidence, and
> its right to refuse to draw any needed inference, is a sufficient
> basis in the evidence to justify giving any lesser included offense
> instruction when the offenses are separated only by one
> differential element for which the state bears the burden of
> proof.

Such lesser offenses are referred to as "nested" and consist of a subset of the

greater offense's elements; one cannot commit the greater without committing the lesser too. ***State v. Randle***, 465 S.W.3d 477, 479 (Mo. banc 2015). A defendant is entitled to a nested lesser-included offense instruction upon request. ***Id***.

As noted, the state concedes trial-court error in denying Vanlue's request to instruct down to the nested lesser-included offense of second-degree ALO. *See* ***Fisher v. State***, 359 S.W.3d 113, 121 (Mo.App. 2011).[1] "[T]he distinguishing element between the two crimes is that first-degree assault requires that the defendant intended to cause death or serious physical injury to a law enforcement officer, while second-degree assault requires that the defendant intended to cause physical injury to a law enforcement officer." ***Id***.[2]

This error raises a rebuttable presumption of prejudice. ***State v. Jensen***, 524 S.W.3d 33, 38 n.3, 40 n.5 (Mo. banc 2017). Although ***Jackson***, the seminal case as to *error*, "does not discuss the various ways the State may overcome the presumption of prejudice,"[3] ***Jensen*** offers guidance as to a reviewing court's ultimate inquiry:

> [W]hen a trial court fails to instruct the jury as required by the MAI, such errors are presumed to prejudice the defendant unless it is clearly established by the State that the error did not result in prejudice. Likewise, in *Jackson*, this Court noted a conviction will be reversed for instructional error only if there is a reasonable probability that the trial court's error affected the outcome of the trial. The fact that a conviction will be reversed only if there is a "reasonable probability" the error affected the outcome demonstrates the presumption of prejudice is rebuttable.

***Id***. at 38 n.3 (citation and some internal punctuation omitted). ***Jensen*** further

---

[1] Vanlue's incident occurred in 2015 when assaults on law-enforcement officers were governed by §§ 565.081 & 565.082. ***Fisher*** cites those and other then-applicable statutes. Effective January 1, 2017, such allegations would implicate the first-degree assault statute, § 565.050, with a "special victim" enhancement for a law-enforcement officer pursuant to § 565.002.

[2] "'Serious physical injury' is 'physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.'" ***Id***. (citing then § 565.002(6)). "'Physical injury' is 'physical pain, illness, or any impairment of physical condition.'" ***Id***. (citing then § 556.061(20)).

[3] ***Jensen***, 524 S.W.3d at 44 (Fischer, C.J., concurring and dissenting); *see also* ***Jensen*** principal opinion, 524 S.W.3d at 38 (***Jackson*** "does not expressly provide the framework for analyzing the presumption of prejudice in cases such as this ...."); ***State v. Prine***, 456 S.W.3d 876, 883-85 (Mo.App. 2015)(Scott, J., concurring)(***Jackson*** did not analyze prejudice issues).

describes the prejudice analysis as "retrospective in that it looks back to the jury's verdict as an objective data point that focuses the analysis on whether 'there is a reasonable probability that the trial court's error affected the outcome of the trial.'" *Id*. at 40 n.5 (quoting ***Jackson***, 433 S.W.3d at 395 n.4).

For other legal guidance relevant to prejudice in this case, we find only our Chief Justice's separate opinions where he reviewed the record and, based on the strength of the evidence, expressed his view that the state had overcome the presumption of prejudice.[4] Finding neither approval nor disapproval of that approach expressed elsewhere, we assume *arguendo* its propriety and review this trial record accordingly.

### Trial Record

This was a two-witness trial. Officer Sellers testified that he had been on night patrol and saw Vanlue behaving strangely. The officer stopped his marked police car, exited the vehicle in uniform, identified himself, asked Vanlue for ID, radioed dispatch from his shoulder mic, and was told there was an active warrant for Vanlue's arrest. Vanlue, within earshot, pulled a butcher knife and lunged at Officer Sellers, whose protective vest turned the knife blade away without injury. After a struggle, the officer disarmed Vanlue, who broke free and fled, but was arrested after a foot pursuit.

Vanlue also testified. On direct, he acknowledged that he had been on probation for three felonies, with an active warrant out for him, and high on meth when this occurred. He admitted having the knife, but denied ever pulling it out of his pocket, and described his encounter with Officer Sellers this way:

> He asked me, you know, what my name was. And, you know, he said he was doing pedestrian checks. And I gave him a fake name. And I'm thinking I'm going to jail for a concealed weapon anyway.... I was like, Man, I'm going to jail for concealed weapon. So when he asked if I had anything on me, I told him I had a butcher knife in my pocket. I told him, I have a butcher knife in my pocket. And he said, I'll tell you what we're going to

---

[4] *See **Jensen***, 524 S.W.3d at 44 (Fischer, C.J., concurring and dissenting); ***State v. Smith***, 522 S.W.3d 221, 233 (Mo. banc 2017)(Fischer, C.J., concurring and dissenting). *Cf*. ***Meiners v. State***, 540 S.W.3d 832, 842 (Mo. banc 2018)(Fischer, C.J., concurring in result)(opining that PCR counsel was ineffective, but prejudice not shown because record showed no reasonable probability that jury would have "gone down" to involuntary manslaughter even with the requested instruction).

do, and he went to move at all and I ran. And the knife had to fall out of my pocket.

His cross-examination ended this way:

Q. There's no doubt that you were fully aware that he was a law enforcement officer when this incident occurred?

A. I knew he was.

Q. And you admit having the knife?

A. Yes.

Q. You admit knowing that Don Sellers was a law enforcement officer?

A. Yes, sir.

Q. You know that you had a warrant?

A. Yes, sir.

Q. You didn't want to go to prison?

A. Yes, sir.

Q. You've lied multiple times to avoid going to prison?

A. Yeah.

Q. But your claim is that, even though you lied about who you were, you were just handing the knife to -- oh, you didn't even hand it, did you?

A. I never pulled the knife out of my pocket. I'm not sure how it come to this.

Q. And you don't know how it got recovered?

A. I know I ran behind the vehicle, and the knife, there's no way it could have been found in front of the car. Why there's not dash cams and vest cams to these kinds of things, I'm not sure.

Q. So it's somebody else's fault?

A. This is truly false.

Q. Don Sellers is lying about everything?

A. Absolutely false. He is inaccurate and lying, yes, sir.

The jury took just 16 minutes to find Vanlue guilty of first-degree ALO.

4

**Discussion**

The state persuasively argues that the record we have summarized rebuts any presumed prejudice. The jury plainly believed Officer Sellers and disbelieved Vanlue as evidenced by the 16-minute verdict. It seems a stretch to think that instructing down to second-degree ALO would have changed anything.

Yet we cannot overlook two factors: (1) unlike many ***Jackson*** complaints, this is not a plain-error claim, but one of timely preserved error; and (2) Vanlue not only requested an instruction based on physical injury (as opposed to serious physical injury), but defense counsel made a related jury argument in closing:

> I'm going to talk a minute about this jury instruction. There is -- the main jury instruction that you're going to consider and the prosecutor laid out the basically three prongs that you have to find to find Mr. VanLue [sic] guilty. First, that the Defendant attempted to cause serious physical injury to Donald Sellers by attempting to stab him. And that's definitely in dispute.
>
> And I would add that we -- I mean, it's not forgone conclusion that this is going to cause serious physical injury. If you read the definitions, and that's what we're guided by is the definition and things in the instructions, the definition of serious physical injury is physical injury that creates a substantial risk of death. There wasn't any risk of death. Or that causes serious disfigurement or protracted loss or impairment of the functions of any part of the body. Somebody can definitely be stabbed by this knife and be fine. Somebody can be cut by this knife and be fine. So I don't think it meets that prong of serious physical injury.

As unpersuasive as that argument may sound on this record, defense counsel had a right to make it and may have done so more effectively had the court given the "mere" physical-injury instruction Vanlue sought and ***Jackson*** required. Long before ***Jackson***, our supreme court emphasized that "Missouri has traditionally placed great emphasis on legally correct instructions, and this Court has made it clear that criminal defendants should be freely allowed to argue their contentions arising from the facts." ***State v. Westfall***, 75 S.W.3d 278, 284 (Mo. banc 2002).

Failure to give a required instruction is presumed to prejudice the defendant unless the state *clearly establishes* otherwise. ***Id***.; *see also* ***Jensen***,

5

524 S.W.3d at 38 n.3. Had defense counsel's jury argument not dovetailed with the missing instruction, or had this been a PCR case like *Meiners*, and certainly had this been an unpreserved plain-error claim, we might reach a different result. Even now it is a close call because we doubt the omitted instruction would have changed the outcome, but we cannot say that is so clearly established that we must not give Vanlue the benefit of the doubt. We reverse the judgment and remand for further proceedings.



# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI, )
)
          Respondent, )
)
   vs. )   No. SD35330
)
DAVID JOE VANLUE, )
)
          Appellant. )

### **DISSENTING OPINION**

I respectfully dissent. Yes, the court should have instructed down, the defense closing made brief issue as to serious physical injury, we presume prejudice unless the record clearly shows otherwise, and we give the defense the benefit of any reasonable doubt on that score.

But a _16-minute_ verdict?[1] Can one truly believe instructing down might have changed this result? If this record doesn't gainsay prejudice, what record could?

DANIEL E. SCOTT, J. – DISSENTING OPINION AUTHOR

---

[1] Including time for a jury note and for the court and counsel to address it. I quote the trial transcript:

(AT 4:28 THE JURY EXITS THE COURTROOM TO BEGIN DELIBERATIONS.)

THE COURT: First question at 4:33. The jury wants to see the entire knife as evidence. We cannot see the point.

MR. ANDERSON: Oh, you mean take it out.

THE COURT: That's what they want, to be able to do that.

MR. JONES: They're welcome to open that up or we can open it up and we can send it.

THE COURT: Hold on. I've got to it -- give a written response. I think having the bailiff to do that, take it out and break the tape and hand it to them.

I guess I don't really need to send them a response. Just break the seal and hand it to them.

MR. JONES: Do it in front of them.

(THE BAILIFF TAKES THE KNIFE TO THE JURY AND THEY RESUME DELIBERATIONS.)

THE BAILIFF: Knock at the door. They've came to a verdict, sir. We have a verdict.

(AT 4:44 A VERDICT IS REACHED.)