

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No.  ED112156 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 2222-CR00787-01 |
| | ) | |
| DEANDRE WILKES, | ) | Honorable Theresa Counts Burke |
| | ) | |
| Appellant. | ) | Filed:  March 18, 2025 |

<u>Introduction</u>

Deandre Wilkes (Defendant) appeals the judgment entered upon his convictions for voluntary manslaughter and armed criminal action.  He argues the trial court erred in allowing the State to introduce prejudicial evidence of uncharged crimes and irrelevant evidence of things the victim (Victim) liked to do, and that the trial court impermissibly limited Defendant's testimony regarding an encounter Victim and Defendant had seven days prior to the shooting.  In view of the whole record, we find no reversible error.

<u>Background</u>

Defendant does not contest the sufficiency of the evidence supporting his conviction.  The evidence at trial, in the light most favorable to the verdict,[1] was the

---

[1] <u>State v. Suttles</u>, 581 S.W.3d 137, 141 (Mo. App. E.D. 2019) (citing <u>State v. Forrest</u>, 183 S.W.3d 218, 223 (Mo. banc 2006)).

following. Defendant testified that he met Victim in November of 2021. Defendant was selling drugs at the time, and he testified that he hired Victim for protection. Defendant testified they were friends, but he eventually fired Victim due to what he characterized as erratic behavior.

Victim's father (Father) testified he had seen Victim earlier on May 14, 2022, and Victim had told Father he had plans for the evening, his birthday. Victim came to Defendant's residence, and Defendant's girlfriend (Girlfriend) testified that Defendant said to Victim that Victim had been told "not to come around here anymore." In response, Victim laughed and said, "yeah, right." Girlfriend testified that Defendant then shot Victim, who was standing at the top of a staircase outside the residence. The bullet entered Victim's neck, and Victim fell down the stairs. The medical examiner testified that the gunshot severed Victim's spinal cord, paralyzing him instantly and causing his death. Two neighbors testified that they heard an argument, heard someone say "you think I won't," and then heard gunshots.

Defendant testified he had heard that Victim had been making threats against him, and he was afraid Victim was going to shoot him because Victim always carried guns in his bookbag. A search of Victim revealed he was unarmed, and there was no bookbag at the scene. Victim was wearing a satchel around his chest that was zipped closed. Girlfriend testified that Defendant had told Victim if he came around, Defendant was going to kill him, and that Defendant had been carrying around a gun in the days leading up to the shooting. Girlfriend testified that Victim "did not have a clue" that Defendant was serious that night.

2

Defendant left the scene immediately after the shooting, and he returned after the police left. He picked up Girlfriend and took her to his brother's (Brother) house in St. Peters, Missouri. The State presented evidence that Defendant had performed a factory reset on his cell phone a few hours after the shooting, but text messages sent after that time included one between Defendant and Brother, in which Brother had said his house was "a good place to lay low and out of the way . . . but she's going to get you all yanked up." Nearly two weeks later, Girlfriend called 911, and police brought her in for questioning. She told them Defendant shot Victim, leading to Defendant's arrest.

The State charged Defendant with first-degree murder and armed criminal action. The jury convicted Defendant of the lesser-included offense of voluntary manslaughter and armed criminal action, and the trial court sentenced Defendant to consecutive terms of 15 years on each count, for a total of 30 years' imprisonment.

## Discussion

Defendant raises three points on appeal. First, he argues the trial court erred in denying his request for a mistrial after the State referred to prior bad acts of Defendant when reading a text message exchange between Defendant and Brother. In Point II, Defendant argues the trial court erred in allowing irrelevant testimony regarding things Victim liked to do, such as playing chess and attending fundraisers. In Point III, Defendant argues the trial court erred in limiting Defendant's testimony regarding an encounter Defendant had with Victim seven days prior to the shooting.

## Point I

Defendant argues the trial court abused its discretion in denying his request for a mistrial after the prosecutor read a portion of a text Brother had sent to Defendant saying,

"They heard the other night when she was talking about putting your hands on her you--." Defendant argues this amounted to improper evidence of uncharged crimes, and the only proper remedy was to grant a mistrial.  We disagree.

"Mistrial is a drastic remedy and should be employed only in the most extraordinary circumstances."  State v. Boyd, 659 S.W.3d 914, 926 (Mo. banc 2023) (quoting State v. McFadden, 369 S.W.3d 727, 740 (Mo. banc 2012)).   The trial court is afforded the discretion to determine whether a mistrial is warranted under the circumstances "because the trial court is in the best position to observe the impact of the problematic incident."  Id. (quoting State v. Roberts, 948 S.W.2d 577, 605 (Mo. banc 1997)).  "The court should grant a mistrial only in the case of a grievous error, which cannot be remedied otherwise."  State v. Whalen, 697 S.W.3d 858, 862 (Mo. App. E.D. 2024) (quoting State v. Carr, 50 S.W.3d 848, 856 (Mo. App. W.D. 2001)).

Here, the prosecutor read the text at issue during impeachment of Brother:

Q.  Okay.  As a matter of fact, you told your brother that being at your house was a good place to lay low, isn't that correct?

A.  No.

Q.  You texted him that, isn't that correct?

A.  I know that they were coming to my house. . . . I'm keeping him safe, it wasn't safe for him to be on the streets until we figured out how to deal with everything, that was the safest place for him.

Q.  But you used the term, "it's a good place to lay low," isn't that correct?

A.  I don't know what I said.

Q.  Didn't you say, "They heard the other night when she was talking about putting your hands on her you--"

4

> [Defense counsel]: Objection, relevance. And based on the previous motions in limine may we approach?
>
> THE COURT: Just read the part.
>
> [Prosecutor]: Okay.
> You said, "You all have a really good place to lay low and out of the way--"
>
> [Defense counsel]: May we approach?

A bench conference followed, in which defense counsel requested a mistrial, citing the court's pretrial conversations with the parties that they could not introduce evidence of uncharged assaults by Defendant against Girlfriend. The trial court denied the mistrial and instructed the prosecutor to read only the portion of the text messages refuting Brother's testimony. The prosecutor agreed, and continued cross-examination of Brother with no further incident.

"Generally, evidence of prior bad acts is inadmissible to show the propensity of the defendant to commit the crime for which he is charged." State v. Winfrey, 337 S.W.3d 1, 11 (Mo. banc 2011). However, "[v]ague and indefinite references to misconduct do not warrant a mistrial unless the reference is clear evidence of the defendant's involvement in another crime." State v. Jensen, 524 S.W.3d 33, 41 (Mo. banc 2017).

Here, the phrase "they heard the other night when she was talking about putting your hands on her" is vague and indefinite. "They" and "she" are not identified, and no specific crime is identified. See id. (noting statements from text exchange that defendant was "messing with" and "too old to be with" a 16-year-old did not clearly and definitely associate defendant with another crime). The statement was isolated, and the trial court took immediate action to limit the prosecutor's cross-examination. While the prosecutor improperly chose to read an unnecessary portion of the text that referenced inadmissible

5

content, in view of the whole record, including the evidence of Defendant's guilt and the fact that the jury decided to forego convictions of first- and second-degree murder, convicting Defendant of the lesser-included offense of voluntary manslaughter, we cannot say that this statement "played a decisive role in the determination of guilt." State v. Russell, 533 S.W.3d 807, 813-14 (Mo. App. E.D. 2017) (listing factors courts use to determine prejudicial effect of reference to uncharged conduct). The trial court did not abuse its discretion in denying a mistrial under these circumstances. Point denied.

## Point II

Defendant argues the trial court abused its discretion in allowing Father to testify regarding things Victim liked to do because it was irrelevant to the issue of whether Defendant murdered Victim,[2] and this deprived Defendant of a fair trial. We disagree.

We review a trial court's decision to admit evidence for abuse of discretion. State v. Hein, 553 S.W.3d 893, 898 (Mo. App. E.D. 2018). An abuse of discretion occurs where the "ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." State v. Gonzales, 153 S.W.3d 311, 312 (Mo. banc 2005). Additionally, we review any erroneously admitted testimony for "prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." State v. Middleton, 995 S.W.2d 443, 452 (Mo. banc 1999) (quoting State v. Morrow, 968 S.W.2d 100, 106 (Mo. banc 1998)).

Here, the trial court allowed the following testimony:

> Q. I haven't shown that to the jury yet. Can you tell me, is that
> – do you recognize?

---

[2] We note Defendant's argument on appeal is limited to the issue of relevance, as well as to specific statements in the record related to things Defendant liked to do. Defendant makes clear in his reply brief he is not raising an argument that the trial court erroneously admitted these and other statements as improper character evidence. Thus, we limit our discussion to the relevance of these few statements by Father.

A.  Yes, this is my son, [Victim], at a fundraiser that I'm giving.

. . .

We raised money for young kids to combat --

[Defense counsel]:  Objection, relevance.

THE WITNESS:  Every time we do a fundraiser he's always there.

[Defense counsel]:  Objection, relevance, move to strike.

THE COURT:  Overruled.

BY [Prosecutor]:

Q.  . . . Tell me about your son [Victim].

. . .

THE WITNESS:  Won't say much.  He like poetry, he did a lot of poetry.  That's why he always came to the fundraiser because he --

[Defense counsel]:  Objection.

THE COURT:  Sustained.  Go to your next question.

BY [Prosecutor]:

Q.  Okay.  So what else did he like to do?

A.  Video games, Dominos.  He liked to play chess with me because I belong to the chess club.

Q.  And what did he like to watch on TV?

[Defense counsel]:  Objection, relevance.

THE WITNESS:  Cartoons.

THE COURT:  Overruled.

Later, Father testified that the fundraisers Victim came to were to provide "bookbags [and] coats for wintertime" to children, and that Victim would be there and "do poetry" for the

7

children. Defense counsel stated, "Just for the record I'm objecting again based on previous objection." The court did not rule on this objection.

To be admissible, evidence must be both logically and legally relevant. State v. Taylor, 466 S.W.3d 521, 528 (Mo. banc 2015). Logical relevance is evidence that tends to make a material fact more or less probable, whereas legal relevance weighs the probative value of the evidence against its prejudicial effect. State v. Donovan, 539 S.W.3d 57, 70 (Mo. App. E.D. 2017). Potential prejudicial effects include "unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence." Id. (quoting Frazier v. City of Kansas, 467 S.W.3d 327, 338 (Mo. App. W.D. 2015)).

The State argues this evidence was logically relevant given the fact that defense counsel's opening statement included assertions that Victim had threatened Defendant and exhibited violent and erratic behavior, to which Defendant later testified during the presentation of the defense. While Father's testimony would generally be irrelevant to the issue of whether Defendant murdered Victim, "[o]therwise inadmissible evidence can nevertheless become admissible because a party has opened the door to it with a theory presented in an opening statement or through cross-examination." State v. Shockley, 410 S.W.3d 179, 194 (Mo. banc 2013) (internal citations and quotations omitted).

Regardless, there was no discernable prejudicial effect from this evidence that deprived Defendant of a fair trial. He was able to testify regarding his view of Victim, and Brother also testified that Victim was in a gang. There was also evidence of Victim's drug use both presented by Defendant and acknowledged by the State's witnesses. As noted, the jury convicted Defendant of the lesser-included offense of voluntary manslaughter,

8

rather than first-degree murder. We find no abuse of discretion by the trial court under the circumstances here. Point denied.

## Point III

Defendant argues the trial court plainly erred in sustaining the State's objections to Defendant's testimony regarding an encounter he had with Victim in an alley approximately seven days prior to the shooting. We disagree.

During Defendant's testimony, he described this encounter, saying that he could have fought with Victim, but he did not "want any interaction with him, no fighting, no nothing." Defendant continued as follows:

> A. Again, so the situation that was transpired was there was a stolen car in the alley, and a young lady --
>
> [Prosecutor]: Going to object to any specifics --
>
> THE COURT: Sustained.
>
> Q. So you had a confrontation with him in the alley just days before the shooting?
>
> A. Yes, sir.
>
> Q. And it was a tense confrontation?
>
> A. Yes, sir.
>
> Q. And when you departed that confrontation, what was your feeling about what was happening between you and [Victim]?
>
> A. I was a little relieved that he didn't have his bag on him at the time because I felt like given the intensity of the conversation with the back and forth I probably would have been shot that day.

Defendant made no offer of proof when the court sustained the State's objection to the testimony regarding specifics about other circumstances in the alley that day.

9

In order to preserve a claim that the trial court erred in excluding testimony, a party must generally make an offer of proof to show what the evidence would be, the purpose of the evidence, and essential facts regarding admissibility of the evidence, in order to permit meaningful appellate review and to allow the trial court to further consider the claim of admissibility. State v. Woods, 357 S.W.3d 249, 253 (Mo. App. W.D. 2012). Because Defendant did not do so, he requests that we review his claim for plain error. Such review is discretionary, and we exercise it only if the "claimed error facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted." State v. Brandolese, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting State v. Clay, 533 S.W.3d 710, 714 (Mo. banc 2017)) (internal quotations omitted).

Here, the record does not reveal and Defendant does not argue what the excluded testimony would have added to his defense. What is contained in the record is Defendant was beginning to describe a stolen car and a young lady, evidence which on its face was unrelated to the confrontation between Defendant and Victim, or to the relevant issue of Defendant's alleged fear of Victim. Defendant was able to testify that it was a "tense confrontation" and describe how he felt after the encounter in the alley. Defendant further testified about several other interactions with Victim that Defendant stated made him fearful that Victim was going to kill him. In light of the whole record, we find no grounds for believing that manifest injustice or a miscarriage of justice resulted from the trial court's decision to sustain the State's single objection regarding the details of a stolen car and young lady in the alley. Point denied.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Gary M. Gaertner, Jr., J.

Philip M. Hess, P.J., and
Renee D. Hardin-Tammons, J., concur.

11